May it please the Court, Scott Hunt, appearing on behalf of Plaintiff Marlon Townsend. This appeal squarely poses a question as to whether the lower court properly applied the cost-of-the-desert-palace ruling in determining to give a solely because-of instruction instead of a motivating-factor causation instruction in this failure-to-promote-race-discrimination case. As the Court knows, under COSTA, the determination of which jury instruction is to be given is based upon the evidence, not, as defendant would argue, a requirement that the plaintiff admit there were legitimate reasons. The Court stated in COSTA the choice of jury instructions depends simply on a determination of whether the evidence supports a finding that just one, or more than one, factor actually motivated the challenge decision. And in this case, we presented numerous forms of evidence that support a finding of discrimination. Here we presented — Hold on a second. It's not just supporting a finding of discrimination. Otherwise, you would have been tossed out to begin with. So, obviously, the evidence would support a finding of discrimination, right? Well, arguably, yes. We survived the directive verdict, so yes. You're not suggesting that you didn't meet your burden of — Precisely. — at least making showing. Okay. So here's the difficulty I've got is beyond that showing, then doesn't it depend upon the defense theory of what its position is? So it had an all-or-nothing position. That is, the interview either worked or you won. I don't believe it depends on their — I don't believe their theory controls whether or not a motivating factor instruction is given. And that reason is? That Costa says you look at the evidence. Okay. And here the evidence supports two — both — the presence of both legitimate factors that could have gone into that determination. But isn't that always true? I'm sorry? I mean, from a plaintiff's perspective, isn't that always true? I would — That is — I mean, your position is, of course we can show discrimination because we brought the lawsuit and we believe that there was discrimination. You survived summary judgment. So of course there's going to be some evidence of a discriminatory decision. The discrimination motivated the Adverse Employment Act, right? Right. Yes. Okay. So if your position, as you just explained it, is correct, then there's always going to be a mixed mode of instruction, isn't there? Well, arguably. But I don't think that's — I don't think that's my position. I'm not asking this Court to say that any time — Okay. Well, if that's not your position, then what is your position? Our position is that although I think that is correct, I think it should be that way, that under Costa you look at the evidence. And under Costa, if there is presence of both a evidence of a discriminatory motive that influenced the decision as well as a legitimate factor that influenced — that may have influenced the decision. Here's my problem. That's always going to be so. I mean, it's always going to be so when you've gotten over summary judgment and a directed verdict isn't granted. Well — But there's going to be evidence, some evidence from which a rational trier of fact could find that the adverse employment action was an account of discrimination. There's going to be some evidence of that. And so now you're saying whenever that's so, then I should have a mixed motive instruction instead of a sole cause instruction. If I — I mean, isn't that right? Well, I think that's right. But I don't think you have to rule that way in this. I don't think you have to rule that any time you get past summary judgment, you're entitled to a motivating factor to rule in this case that we were entitled to it, although I believe that is a correct position. Okay. Then if that — okay. Then on that premise, what you're saying is that there is some evidence from which a trier of fact could find that the decision was motivated by discrimination as well as by legitimate reasons. Exactly. All right. Which is what I believe is required under COSTA. What shows that the — what evidence do you have that shows that the decision was both discriminatory and legitimate? Well, initially there are, as to the factors that go into the interview process, there are numerous pieces of evidence we established that they deviated from the policy as to how it was to be conducted, that they deviated from the policy of a one-year requirement as to who would be selected, that they — that there was evidence that our client was too street and that they had considered — that the decision-makers would consider that. So there's evidence that of that discriminatory motive, which is, of course, as you say, required and we wouldn't be here. Then there's also evidence that they, in the same interview process, they thought he was not as well-prepared as he might have been. But isn't that going to be true in every discrimination case? That's what I'm just trying to work out with you, because I find this very sort of confusing. Well, I think it's because — That's why I'm looking for help, because — And I think it's because COSTA is confusing, Your Honor. Well, sure, but we've got to deal with that. Right. So I'm trying to, with your help, figure out exactly where the line is, because what you've just described is always going to be true. And from my position, Your Honor, if the plaintiff asks for a motivating instruction, then that opens the door for the defendant to say, we want to assert the same decision defense. And under the statute, they would be — that would be their prerogative. But as — That just turns COSTA right upside down. It says, you know, it's the defendant's the one that's entitled to the instruction, not the plaintiff. I mean, it's very odd. It's odd. I think the oddness is because of the procedure posture of COSTA. COSTA was a position — the case was where it was a question of abuse of discretion to have given the a motivating factor instruction with the same decision defense included in the instruction. And so COSTA doesn't really give us clear direction as to how do we determine where to give the motivating instruction to begin with. It simply says it was an error to have given it. And what my position would be is that there may be some rare case where the reasons are mutually exclusive. But as a plaintiff, I can't — I haven't been able to come up with what that would be. Under the statute, all I need to prove is that it's a motivating factor. If I prove it's a motivating factor, that is sufficient under the statute. So therefore, if I request that instruction, as we did in this case, that leaves the option for the defendant to assert the same decision defense or not. But the defendant — So now we've just done away completely with the sole cause instruction. It doesn't exist anymore, right? Well, it — And if that's so, then why? Why should we just say that? Why should we write that? I don't think you have to — again, I think under Costa, this case has evidence of both legitimate and discriminatory reasons that could have been considered in the decision not to promote. So I'm not taking the position that you have to rule that way. Having said that, I believe that if the plaintiff — that Costa doesn't address this question squarely and that if a plaintiff does ask for a motivating factor, that's all that's inquired under the statute, that the defendant can't say, well, you don't get that instruction because we're saying it's because of instruction. They don't get to pick the defense and eliminate the — and change the burden that the statute imposes. The plain language of the statute is all we have to prove is a motivating factor. They don't get to up that burden by saying, we're going to defend that it would have been — that it's the only factor. They get to defend that burden by saying, we would have made the same decision anyway. If we don't — if we as plaintiffs choose not to expose ourselves to the same decision defense, we can ask for the because of instruction. And by so asking, we have exposed ourselves to that burden, but we haven't — we have done so choosing to eliminate the possibility of the same decision defense. Kosta, I think, is very confusing because of the posture. And I've offered what I believe should be the proper application. I appreciate your help. Thank you. This plaintiff, I mean, this defendant, I recall someplace, told the jury that this is either discrimination or nothing. Didn't they expressly assert that to the jury? I believe that was their position in closing argument, Your Honor. And so here this defendant is saying, members of the jury, you either find that we discriminated against this man or we did not. We're not offering you any reason why we fired him other than the fact that — I mean, that we didn't promote him other than the fact that we simply didn't do it. Now, you decide whether or not it was racist. Well, that would be — And now they have not suggested that they have some legitimate reason — Right. — totally aside from discrimination. They have not — you're suggesting reasons why they might have done it. And the reasons that you are suggesting all arise out of the interview process. Am I right? Not entirely. All right. Go beyond the interview process. And what do you think the motive a jury could have found for terminating him other than that arising out of the interview process? Well, perhaps I misunderstood the question. I think — Well, I'll repeat it. No. I think — let me take a stab at it, if I may. All right. Judge, if their position was you either find — if they didn't offer a legitimate reason, then they could be entitled to the because of instruction. I guess that's the one place where the defendant can't just pick a motivating factor. If they don't — if they offer no legitimate reason, if they just say, look, we're not even going to propose a legitimate reason, we're just here to tell you it's not discriminatory, it's either or, then I believe that the defendant could pick and dictate a because of reason because they haven't asserted a legitimate reason. But here they've asserted a legitimate reason. They say it's purely the numerical scoring in the interview. All right. No. And the problem with that is that there's evidence that it wasn't purely numerical scoring, and it also begs the question as to whether the scoring's influenced by a discriminatory animus. All right. Now my question. Point to some evidence other than the interview process that was a reason for them not offering him a full-time job. The evidence is within the multiple, varying, inconsistent reasons given by Ms. Muddell for the — for Mr. Townsend not getting the promotion. And I think one of the key ones is that she herself points to performance issues, and she explains performance issues, which defendant asserts is not part of the interview process. Defendant asserts it's a level playing field, that performance is what got him into the group of 12, and that the interview process was based purely on this numerical scoring of three answers to three questions. The problem with that is Muddell says, well, after she tries two or three explanations, gets to, well, there's performance and attendance issues. So she brings in factors outside of the interview process in her explanation. That — in her explanation to McBurney, the investigator who conducts the investigation after Mr. Townsend raises his complaints, she admits, according to the interview, not entirely. Defendant's position at trial may have been entirely interview scores, but the evidence was it wasn't entirely. It was mostly interviews. So that opens the door in this case for us to argue there's some — maybe there are some legitimate reasons. Maybe the performance issues and attendance issues are a factor. All we — all the judge has to do is say, could that have been a factor? I've already ruled that there's evidence of discriminatory animus. If those are both present, we get a motivating factor, and we didn't. And the problem with not getting it is if the jury looks at the evidence and says, well, yeah, there's all this stuff about race and being too street and considering the favorites that were mentored ahead of time, and by golly, they're all white. But, you know, maybe they were concerned about performance. Maybe they — maybe within this mix of factors, they did consider that he wasn't as prepared as he could have been or that he acted like he was a shoo-in. And the problem is if the jury reaches that conclusion with a solely because of instruction, Mr. Townsend loses, even though the jury has reached the conclusion that race was a factor.  It prevents the jury from concluding that there may have been more than one factor. If they do, we lose. That's not how the law works. The law doesn't work that if there's more than one factor including race, you lose. That turns it completely upside down. Well, now, back to Judge — now, why wouldn't — can we — can we conceive of a case in which a sole motive instruction would be appropriate? Your Honor, I struggled with this. We can't — there's no way that we can conceive of having such a case, is there? The only way I can conceive of it is what Your Honor posited earlier, and that is if the defendant chooses to simply rest on defeating the prima facie case, if the defendant doesn't offer a legitimate reason and simply says, whatever it was, it wasn't race, there is absolutely no evidence of race here, that's all we need to show we rest our case. That's the only — conceptually, that's the only way I can come up with a because of instruction. But I return to my earlier sort of hypothetical how do we handle it in the face of Costa. I believe we're always entitled to a motivating instruction if we ask for it. I think that's all we have to prove under the statute. And then they get to pick if they want to adopt the same decision defense. All right. Now, do you want to say anything about the — Yes. — about the discretion involved here? The district court, according to the case, the district court has discretion as to whether or not to put into this. Right. Very briefly. I'm running short on time. All right. I want to — if we look at the head case, which we cite in our materials, even though the — even though Costa establishes an abusive decision — or use of discretion standard, if you look at how the court applied that in the head case, it appears to me that really the court takes a look at the evidence, and if this court determines that it could have been both a legitimate and a, if you will, discriminatory reason, then this court says that's an abusive discretion. It's, in essence, almost a de novo review the way I see it applied. I acknowledge the standard is what it is. I do want to make a quick point before I sit down, and that is that the three evidentiary rulings compounded the issue of the sole motivating factor because it both excluded evidence of favoring white, cute women, and it also allowed in the character evidence of, well, he never discriminated against anybody else. I never saw him do it. And that kind of character evidence shouldn't come in. Those two factors compound the problem with the sole instruction. And, of course, we believe that the inconsistencies in the application of the interview process and the ineffective investigation of those complaints as to the punitive damage claim established that the efforts to implement the anti-discrimination policies were not in good faith, or at least for purposes of the ruling did not, as a matter of law, establish an affirmative defense. We at least raised a question of fact as to that. What did you argue as far as race being a motivating factor? What do I argue is the evidence of race being a motivating factor? Well, we argue the multiple reasons as to how the defendant deviated from its policies, procedures, and practices. They were supposed to ‑‑ it starts with whether or not he was the most experienced. He was. It goes to the fact that the decision makers discussed their favorites who they had mentored that were white. It goes to the ‑‑ it proceeds to the violation of the one‑year rule as far as being in a position one year. Other circuits have held that deviation from an established policy or practice is evidence of discrimination. There were numerous violations of the CBS process itself as far as how many people were to be interviewed, how many competencies were to be tested. All of these things allowed Anderson, one of the two rather than three interviewers, to have a greater impact. There's evidence of inconsistent explanations as to why the decision was made. This court has held in numerous cases ‑‑ This was a jury trial, wasn't it? I'm sorry? You had a jury trial. Right. What did you say to the jury? Race. Did you say to the jury that race is a motivating factor? Absolutely. How did you say it? How did we say it? Yeah. I'm not ‑‑ I'm not sure I understand the question. Did you say to the gentleman, the jury, race is a motivating factor in this trial? I don't think it was ‑‑ I don't think it was worded that precisely, but, yes, that was the position to the jury. Would you dance around it? No. I don't ‑‑ I didn't mean to suggest that. I'm saying I can't off the top of my head give you the exact language in closing argument as to how that was pitched to the jury. But, yes, that was the pitch. It wasn't something other than that. It was that we have evidence that it's a motivating factor, that we have evidence that it's a consideration in the decision. Thank you. Please, the court. Scott Seidman for Defendant Nike. First, to answer your question, Judge Fragerson, I believe the presentation to the jury on closing argument was that Nike does occasionally promote black and African‑American employees, but it does so only for African‑American employees who act, basically, who act white, and that Marlon Townsend was too black, too street, and that's why Nike didn't promote him, both in opening argument and in closing argument. And, of course, opening was made before any decision was made as to what kind of sole cause or motivating factor jury instruction was going to be given. Plaintiff's counsel argued, as we cite in the brief, that the interview process was window dressing, that basically it was a sham and a fraud, and that it was not a legitimate reason for Nike not to have promoted Marlon Townsend. Now, Judge Reimer, I think your question has raised the precise problem with plaintiff's argument, and that is that their argument does away with the sole cause jury instruction. Basically, what they're saying is any time I ask for the mixed motive instruction, I get the hat. One of the flaws in plaintiff's argument is the notion that giving a sole cause instruction as opposed to a mixed motive instruction somehow raises the burden on the plaintiff. If you read Costa, that's certainly not what the Costa court says. The Costa court says that regardless of what kind of instruction you give, the plaintiff's burden is always the same. The plaintiff has to prove that the decision, whatever it was in this instance, promotion, was because of an impermissible factor, in this instance because of race. So the plaintiff's burden doesn't change in either instance. The issue that changes, the thing that changes is the defendant, in some cases, because of the evidence the defendant presents, gets to argue that, look, even if you jury conclude that we discriminated against the plaintiff in this instance, we would have taken the same action nevertheless. If that factor had been totally eliminated, we still would not have hired or promoted Marlon Townsend. This case, from the opening arguments, both sides argue that this was an either-or case. Both sides argue that you either believe that Nike validly conducted the interview process and determined that Marlon Townsend was not one of the top six scorers, or else you conclude that the interview process was a fraud and a sham and pure window dressing and that, in fact, it was infected by discrimination. And if you look at the evidence that Townsend put on, it was directed at attacking the validity of the interview process. Townsend puts on the evidence about the two-street comment. He says Pete Elizondo told him, you've got to be worried about those people who are making this decision because they won't promote somebody to this position who's two-street, and you ought to consider that. The reason for that evidence was to show that the two people who interviewed him, who conducted his interview, were motivated by race when they conducted that interview. Townsend also said, look, it has to be false that I didn't get one of the highest six scores. And the reason it has to be false is because I participated in the mock interview process that Nike did to institute the CBS interview system. And when I did that, I had the highest score on the mock interviews. And they asked the same questions in this interview process as they did in the mock interview process. So if I got the highest score then, it had to be that I must have been one of the best interviewees in this process. Well, the problem for Townsend was the jury heard that Townsend was never even told what his mock interview score was. And he was never told what the other mock interviewees' scores were, so how could he possibly know that he had the highest score on the mock interviews? And the other problem was Nike didn't keep those. In fact, what it was was a training process to train the managers who were going to implement the CBS process for them to get some experience implementing the process. It wasn't a training process for prospective or potential interviewees. So that explanation made no sense. And then they offered one other explanation I'll find in a second, sorry, that there was a problem with the interview process itself because it didn't include all the bells and whistles that the CBS interview process was supposed to include. You're supposed to have three people interviewing you. You only had two people interviewing you. You're supposed to use more questions testing for each competency. Well, okay, he put on that evidence, and that evidence was designed to make the jury believe that the interview process wasn't fair. However, Nike explained, Chris Anderson explained why the interview process was conducted the way it was, that they used, tested for fewer competencies because they were interviewing nothing but internal candidates. So some of the competencies they might have tested for with outside candidates were unnecessary. And second of all, that typically in jobs like this, these kind of retail jobs, you would only use two interviews. You didn't typically use three interviews. And you would ask fewer questions. So that explanation was given. The jury had the opportunity to evaluate. And, of course, the jury concluded that Mr. Townsend didn't prove his case. That should hardly be surprising to anyone. There's no question that the scores were what they were, that Marlon Townsend wasn't one of the top six interview scores. And so, and the other evidence the jury had, the jury got to see what answers Marlon Townsend gave to the interview questions. They got to see the same thing Nike got to see. They got to see all the other candidates who got promoted. And last of all, they got to see the fact that Nike had promoted an African-American male as one of the six people who got the promotion. So why it should surprise or shock anybody that the jury reached the conclusion they did is a bit of a mystery. Now, COSTA tells us that the trial court, as you pointed out, Judge Lee, the trial court has the — it's an abuse of discretion standard. The trial court has the discretion to evaluate the evidence. And, of course, that's because the trial court was there at the trial and got to see all the evidence that came in. And the trial court makes the initial evaluation as to whether or not the case ought to be sent to the jury as a sole cause or a mixed-motive type case. Judge — Judge Mossman reached a logical conclusion that this had to be an either-or case, that it couldn't be that the interview score was fair, and that Marlon Townsend fairly flunked the interview, and at the same time that the interview score was infected by discriminatory animus, that those two things, I'm afraid, are mutually exclusive. It couldn't be both. It had to be one or the other. And he correctly perceived that's the way the parties tried the case. That's how they — that's how they stated the case on opening argument, and that's how they tried the case. And that's why the judge properly gave the sole cause instruction. Nike never asked for a same-decision defense because that wasn't Nike's position in the case, and Nike didn't present any such evidence. So if — This instruction was given by the court on its own motion. Oh, no. Nike asked for the sole cause instruction, and Mr. Townsend asked for the mixed-motive instruction. So all Nike did was propose — used the model of jury instruction that this court has established for sole cause cases. So there's no question that the wording of the instruction was correct. The only question is whether Judge Mossman abused his discretion in this instance by determining that the sole cause instruction was the proper instruction to be given here. I mean, how do you ever get an instruction? How do you ever have a situation, realistically, where a person's race is involved and you can give an instruction that the sole cause is limited? My view is that — I would suspect that most race cases, in particular, are going to be sole cause-type cases. I mean, we do have — we have examples of cases where a mixed-motive instruction — if all considerations of race in the society were eliminated, you know, if people just were never concerned about it. Or as Lyndon Johnson said, we'll arrive at that point in our history when a white kid in Texas wakes up one morning and asks his mother why he isn't black. That's when it'll be gone. Well, we may be getting — It's always got to be a factor. We may be getting pretty close to being there, Judge Pragerson. I mean, the current youth are so — I hope so, but I'm not that incurred. Yeah. Well, if you look at the Nike Beaverton employee store, I mean, there's — Oh, yeah. Nike's — yeah, I've been over there. I've been down the street. We've got a great picture of that great athlete, basketball player, Michael Jordan. I mean, it's certainly part of Nike's culture. I mean, Nike's the biggest in basketball. Basketball is primarily populated by African-American athletes. They have the largest number of African-American athlete endorsements. I mean, it's — Nike is a company devoted to diversity because it's good for business for them. They sell lots of shoes and apparel and products to a very diverse population, not only in the United States but around the world. So it's just good business for them to — and that's what Mr. Elizondo testified to at trial. Not only was he personally motivated to have a diverse workforce, but it made perfect business sense for Nike's business model to do that because that's a huge part of their customer base. Do you have — if you have no more questions about the sole cause or mixed motive instruction, or do you have any questions about any other issues in the case? Thank you very much. Okay. Thank you. Well, I don't have enough time. I'm going to try to think. I'll do it in a minute. I'll do it in a swoosh. I'll try to be quick. I'll point out to the court the cost of language. Put simply, the plaintiff in any Title VII case may establish a violation to a preponderance of evidence that a protected characteristic played, quote, a motivating factor, any Title VII case, according to this court. How the arguments may have been played in closing or opening, whether it was window dressing or not, doesn't eliminate the fact that there was evidence of both legitimate and discriminatory reasons put on. The two-street language was characterized the way counsel suggested it was, in that Mr. Townsend was too black compared to others. Again, that doesn't change the fact that there may have been the presence of both type of factors. It simply is commenting on the evidence where there was a Mr. Lewis who was also selected. The defendant makes a big point out of the case that, of course, the jury concluded that there was no evidence of discrimination. Unfortunately, under this instruction, we don't know that. Under this instruction, the jury may have concluded there was evidence of discrimination, but it wasn't the sole reason for the decision. I want to return to the abuse of discretion standard because I fully recognize why this court is cognitive of it and concerned about it. I would again draw the court's attention to the head case, Head v. Glacier Northwest, cited in our materials where Costa was applied. And essentially, I believe the court found that if there is evidence of both factors, then it was an abuse of discretion. So, yes, it's the abuse of discretion standard. I don't want to sound like I don't think it is, but that's how it was applied. If this court finds evidence of both, it may overturn the ruling on the lower court. Whether or not Nike is committed to diversity, the issue in this case is whether – Don't say lower court. I'm sorry? Don't say lower court. I'm sorry, the trial court, Your Honor. Very good. And I recognize the sentiment there. Thank you. Okay. Thank you.
judges: Pregerson, Leavy, Rymer